UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NORETTA F. BOYD, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|    vs. | ) CAUSE NO. 1:14-cv-119-WTL-MJD |
| | ) |
| KEYSTONE CONSTRUCTION, et al., | ) |
| | ) |
|   Defendants. | ) |

## ENTRY ON MOTION TO DISMISS SECOND AMENDED COMPLAINT

This cause is before the Court on Defendant Keystone Construction Corporation's ("Keystone") motion to dismiss the second amended complaint (Dkt. No. 68). The Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the reasons set forth below.

## I. STANDARD

Keystone seeks dismissal of the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). As the Court noted in its previous ruling, "[i]n order to survive a motion to dismiss, a plaintiff must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. And while we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014) (citation omitted). That said, however, and critical to the Court's review of the instant motion, "the pleading standards for *pro se* plaintiffs are considerably relaxed." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013). This means that complaints drafted by *pro se* litigants are construed liberally and held to a less

stringent standard than those drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Further,

> [i]n conducting our review, we must consider not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. We also must consider additional facts set forth in [the plaintiff's] . . . briefs, so long as those facts are consistent with the pleadings.

*Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (citations and internal quotation marks omitted). Accordingly, in considering the instant motion, the Court has considered the facts alleged by Boyd in the briefs she filed in opposition to it in addition to the facts alleged in her second amended complaint.

## II. PROCEDURAL BACKGROUND

Plaintiff Noretta F. Boyd filed this case against Keystone[1] alleging a variety of claims. Keystone moved to dismiss Boyd's complaint against it in its entirety. That motion was granted; however, the Court gave Boyd the opportunity to file an amended complaint if she believed she could correct the deficiencies that resulted in the dismissal of her original complaint. Boyd timely filed an amended complaint; she later moved to file a second amended complaint to correct a few minor errors in the first amended complaint. That motion was granted and her second amended complaint was filed; Keystone has now moved to dismiss once again.

## III. FACTUAL BACKGROUND

The facts as alleged by Boyd are as follow.

On September 27, 2012, Keystone offered Boyd the position of "Project Manager—Wishard Hospital Electrical Services." While Boyd was an employee of Keystone, her

---

[1]As discussed further below, another defendant named in the original complaint, The New Wishard Project Team JV Partnership, was dismissed by the Court prior to being served.

assignment was to manage six bid packages on a large construction site—the building of a new hospital—for a contractor on the project, Jacobs Engineering Consulting ("Jacobs"). Her job responsibilities required her to interact with contractors with whom she had had issues in the past or who harbored ill-will toward her because she had recently sued a local contractor for non-payment. At the time Boyd was hired, the "New Wishard Project," as Boyd refers to it, was "approximately 70% fiscally complete." Dkt. 66, Second Amended Complaint at ¶ 13.

On November 28, 2012, Boyd met with Paul Okeson, a Keystone executive, and expressed her concern "with the level of inconsistencies and over charges she was finding on entitlement alone and how to balance those items with the field work of those contractors at this stage of the Project." *Id.* at ¶ 16. The following day, she spoke with Lynn Wall, Keystone's Vice President of Construction,

> about the cost proposals, the inconsistencies, the requirement to review those proposals and her familiarity with those contractors from previous projects, the circumstances made her recent inception into the project extremely adversarial, as this process was not being practice[d] by any of the other project managers. Mr. Wall noted that she had been "Dropped off into Vietnam without a parachute," on this project.

*Id.* at ¶ 19. Boyd further alleges that

> During this time [she] would experience what one would consider "hazing" which included mobbing, bullying, ridicule, invasion of privacy, gas lighting, removal of files and work both on her desk and computer desktop, rummaging through her belongings, harassment to and from work, and even going between buildings to meetings. [Boyd] would be reprimanded for something not done right (even if the process had changed multiple times) and an urgency to "sign off" on cost events under her charge.

*Id.* at ¶ 21.

On March 15, 2013, Boyd met with a project executive[2] and discussed the following:

---

[2] Inexplicably, Boyd has blacked out this and several other names in her second amended complaint "for privacy." She should not do so in future filings.

3

> a) Concerns with cost proposals that were inconsistent or inflated[;]
> b) Immediate manager's . . . selective micro management of [Boyd's] work[;]
> c) The proposals [sic] level of review, passing the "stink" test[;]
> d) They were glad [Boyd] was there and would need everyone until the end of the project;
> e) [Boyd's] date of departure was Nov. 3, 2013[;]
> f) The Quality Program and that most were not reviewing specifications, and was glad [Boyd] was doing that[;]
> g) The $890K proposal for medical equipment, that [Boyd] did not review, as he suspected; but was approved[;]
> h) Others put [Boyd's] initials on cost events without her knowledge.

*Id.* at ¶ 22.

On June 6, 2013, Boyd's "primary critical work duties were taken away and given to a colleague." Boyd reported this to Mr. Wall at Keystone.

On July 22, 2013, Boyd received an email "requesting she begin to send a list of cost proposals by Wednesday of each week . . . requesting weekly meetings to resolve remaining cost proposals within their bid package for review on Friday of the same week, in preparation for issuance in a change order." *Id.* at ¶ 25.

Boyd "was dismissed on August 16, 2013, after presenting a written complaint on August 14, 2013, with regards to entitlement, cost and scope discrepancies, between change order proposals and base bid documents, and the retaliation she experienced in providing that information as part of her duties." *Id.* at ¶ 26. It appears that Boyd was dismissed from working on the New Wishard Project by Jacobs, and that the reason given was "not sending change orders through fast enough." *Id.* at ¶ 27. On August 28, 2013, Mr. Wall and Mr. Okeson of Keystone met with representatives of the New Wishard Project, following which Boyd was told that "there was no other work." *Id.* Thereafter her employment with Keystone was terminated.

4

## IV. DISCUSSION

Boyd asserts six enumerated counts in her second amended complaint. Keystone moves to dismiss each of them.

*Count I: Federal False Claims Act*

Count I of Boyd's second amended complaint is entitled "Retaliatory Discharge in Violation of the False Claims Act, 31 U.S.C. 3729-3733." The False Claims Act provides relief to an employee who is discharged or otherwise retaliated against for taking acts "in furtherance of an action under [the False Claims Act] or other efforts to stop 1 or more violations of [the False Claims Act." 31 U.S.C. § 3730(h)(1). As relevant here, the False Claims Act is violated when someone "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the federal government, 31 U.S.C § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

> In reviewing this claim in her original complaint, the Court found:
>
> Boyd has not provided sufficient facts to demonstrate that her claim for retaliation under the federal False Claims Act is plausible because, while she has alleged that the project was publicly funded, she has not alleged that it was funded by the federal government; nor has she alleged that she reasonably believed that any of the "entitlement, cost and scope discrepancies" she complained about had resulted in or would result in a false claim for payment by the federal government. The False Claims Act does not prohibit retaliation for any kind of complaint about improper behavior made by an employee; the improper behavior must relate to claims for money from the federal government. To have a viable complaint for retaliation under 31 U.S.C. § 3730(h), Boyd needs to explain what complaints she made, whom she made them to, and how what she was complaining of related to false claims for payment that had been or were going to be made to the federal government. She has not done so; accordingly, that claim must be dismissed.

Dkt. No. 53 at 4-5. Boyd's second amended complaint fails to correct these deficiencies. Other than her general assertion that the New Wishard Project was a "publicly funded healthcare

5

facility project," the only allegation Boyd makes with regard to federal funding is that the project was "funded all or in part by federally taxable Build America, general obligation and revenue [municipal] bonds." Dkt. No. 66, Second Amended Complaint at ¶ 34. This allegation is not sufficient to provide the necessary link between her complaints about "entitlement, cost and scope discrepancies, between change order proposals and base bid documents" and fraudulent requests for payment from the federal government. Boyd alleges that she complained about improprieties that she believed were being committed by contractors working on the New Wishard Project, but she does not allege that those improprieties were related to fraudulent claims for payment from the United States, and the mere fact that Build America Bonds were used to finance the project does not suggest that they were. *Cf. U.S. v. Sanford-Brown, Ltd.*, ___ F.3d ___, 2015 WL 354122 (holding that failure to comply with federal regulations after receiving federal subsidies does not give rise to liability under False Claims Act absent evidence that subsidies initially were obtained in bad faith). Nor is the fact that federal regulations were referenced in New Wishard Project documents; the reference Boyd cites does not indicate that those regulations were applicable to the project because it was federally funded, but rather that the parties to the contract agreed to follow the protocols set forth in the regulations. Even if Boyd had alleged that she had reported actual violations of federal regulations, "'[t]he False Claims Act was not designed for use as a blunt instrument to enforce compliance with all regulations.'" *Id.* (quoting *Mikes v. Straus*, 274 F.3d 687, 699 (2nd Cir. 2001)). Boyd simply does not allege that she took any action to report or try to stop any false claims for payment from the federal government; accordingly, Boyd has failed to state a claim for retaliatory discharge under the federal False Claims Act.

*Count I: Indiana Code 22-5-3-3*

Count I of Boyd's second amended complaint can be read also to assert a claim under Indiana Code 22-5-3-3, which provides:

> (a) An employee of a private employer that is under public contract may report in writing the existence of:
>
> > (1) a violation of a federal law or regulation;
> >
> > (2) a violation of a state law or rule;
> >
> > (3) a violation of an ordinance of a political subdivision (as defined in IC 36-1-2-13); or
> >
> > (4) the misuse of public resources;
>
> concerning the execution of public contract first to the private employer, unless the private employer is the person whom the employee believes is committing the violation or misuse of public resources. In that case, the employee may report the violation or misuse of public resources in writing to either the private employer or to any official or agency entitled to receive a report from the state ethics commission under IC 4-2-6-4(b)(2)(G) or IC 4-2-6-4(b)(2)(H). If a good faith effort is not made to correct the problem within a reasonable time, the employee may submit a written report of the incident to any person, agency, or organization.

Ind. Code 22-5-3-3. An employee may not be fired for making such a report. *Id.*

As the Court explained in ruling on the first motion to dismiss:

> In order to state a claim for retaliatory discharge under Ind. Code 22-5-3-3, Boyd must plead facts that show that the written complaint she made on August 13, 2013, involved at least one of the four categories of information described in Ind. Code 22-5-3-3(a)(1)-(4). In other words, she needs to explain how "entitlement, cost and scope discrepancies between change order proposals and base bid documents" constitute violation of a law, regulation, ordinance, or the misuse of public resources.

Dkt. No. 53 at 5. Keystone argues that Boyd's second amended complaint fails to provide the requisite explanation. The Court agrees. Boyd argues that she has stated a claim under Indiana Code 22-5-3-3(a)(4) by complaining about the misuse of public resources. While Indiana Code 22-5-3-3(a)(4) is broader than the False Claims Act in that it does not require a direct link to a

7

request for payment from the government, but rather requires the somewhat broader "misuse of public resources,"[3] unlike the federal statute, the Indiana statute requires a *written* complaint. The written complaint pointed to by Boyd—her letter dated August 13, 2014, found at Dkt. No. 22-16, is not a complaint about the misuse of public funds. Rather, it is a complaint about the manner in which Boyd has been treated by the contractors whose bid packages she was assigned to manage, treatment that she felt was a result of dealings she had had with those contractors during her past employment. *See* Dkt. No. 22-16 ("The issues have been ongoing since my inception into this project and often times reflect similar behavior, patterns, activities and change management challenges with past employment and projects. In fact, contractual relationships exist (vendor/contractor) from the most recent former employer and that establishment is often emphatically re-emphasized, it appears, to confirm my awareness of them.") The concern she expresses in her letter is concern for the "professional and personal impact" this unfair treatment is having on her, not concern about the misuse of public funds. *Id.* ("The subsequent behavior surrounding and related to those relationships severely impacts my ability to perform those duties effectively. As a result, there has been a negative perception and attack of my ability to perform those duties . . . . That perception has evolved and been accepted to the extent of having duties removed, transferred and/or delegated to others by either emails, innuendo, and sometimes without my knowledge. . . . These events (prior and present) have and are having a professional and personal impact in several ways. This correspondence is an effort to notably relay those concerns."). While Boyd may have believed public resources were being misused on the New

---

[3] "[M]isuse of public resources" means "a direct expenditure or use of public funds, property, or resources for a purpose other than that contemplated by the contract in question." *Coutee v. Lafayette Neighborhood Housing Services, Inc.*, 792 N.E.2d 907, 914 (Ind. Ct. App. 2003). It does not encompass any and all improprieties or inefficiencies that might take place during the course of a public project.

Wishard Project, and while she characterizes her August 13, 2013, letter as an expression of those concerns, the content of the letter itself does not support that characterization, and "[t]o the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips,* 714 F.3d at 1020.

Boyd has failed to point to any written complaint that she made regarding the misuse of public resources. Accordingly, Boyd has failed to state a claim under Indiana Code 22-5-3-3.

*Count II: Breach of Contract, etc.*

Count II of the second amended complaint is entitled "Breach of Contract; Breach of Implied Covenant of Good Faith and Fair Dealing; Promissory Estoppel; Unenforceable Non-Compete; Unclean Hands Doctrine—Defendant." In her response to the motion to dismiss, Boyd clarifies that she is not attempting to assert several separate claims, but rather is asserting only a breach of contract claim in this count. Dkt. No. 73 at 36 ("Plaintiff did not cite the covenant of good faith and fair dealing[4] as an 'independent cause of action'; it is cited as relevant to the cause of action of breach of contract in conjunction with promissory estoppel, an unenforceable non-compete agreement and the unclean hands doctrine.").

With regard to her breach of contract claim, as the Court noted in ruling on the first motion to dismiss,

> it appears that Boyd alleges that Keystone breached an employment agreement with her by terminating her employment. The document she has attached as

---

[4]Boyd's assertion that "[e]ntering any written agreement, between parties in the state of Indiana, implies a covenant of good faith and fair dealing," Dkt. No. 73 at 32, is simply incorrect. *Old National Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015) ("Indiana law does not impose a generalized duty of good faith and fair dealing on every contract."). Under Indiana law, "[i]t is undisputed that 'Indiana does not recognize such a cause of action in employment at will contexts.'" *Northern Indiana Public Service Co. v. Dabagia*, 721 N.E.2d 294, 300 (Ind. Ct. App. 1999) (quoting *Mehling v. Dubois County Farm Bureau*, 601 N.E.2d 5, 8 (Ind. Ct. App. 1992)). Because Boyd was an at-will employee of Keystone, no implied covenant of good faith and fair dealing governed their relationship.

9

> Exhibit 1 to her Complaint, which she refers to as an "employment agreement" is simply an offer of employment. It is not a contract of employment; in fact, it expressly states that it is "not a contract of employment or guarantee of employment for any specific duration" and that her employment was to be at-will, such that "either you or we may terminate your employment at any time for any reason at all, with our without notice."

Boyd points to nothing new in her second amended complaint to support a breach of contract claim. There are simply no facts that suggest that Boyd's employment with Keystone was anything other than at-will.

In her response to the motion to dismiss, Boyd suggests that what she is really asserting in this count is a claim for wrongful termination in violation of public policy. That is a tort claim, not a breach of contract claim. Giving a claim the wrong label is not fatal, of course, but because the public policy Boyd alleges was violated is the policy of encouraging the reporting of fraud in government contracts, she does not have a common law claim for wrongful discharge. Rather, such claims must be brought under Indiana Code 22-5-3-3 and must satisfy the requirements of that statute. *Coutee*, 792 N.E.2d at 911. As discussed above, Boyd has failed to state a claim under the statute; she may not resurrect the claim by couching it in common law terms.

Finally, although Boyd purports to mention promissory estoppel "in conjunction with" her breach of contract claim, as Keystone points out, claims for promissory estoppel and breach of contract are alternative theories; a claim for promissory estoppel cannot be asserted where a valid contract exists. Here Boyd has failed to plead the existence of an enforceable employment contract, so the Court will consider whether Boyd has asserted a claim for promissory estoppel.

> Promissory estoppel or quasi-contractual remedies permit recovery where no contract in fact exists. Quasi contracts do not arise from the parties' express agreement, but are implied by law in order to remedy wrongful enrichment of one party at the expense of another. The elements of promissory estoppel are as follows: (1) a promise by the promissor; (2) made with the expectation that the

10

> promissee will rely thereon; (3) which induces reasonable reliance by the promissee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise.

*Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 367 (Ind. Ct. App. 2008) (citing *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001) (other internal citations and quotation marks omitted). An at-will employee may invoke the doctrine of promissory estoppel; "[t]he employee must assert and demonstrate that the employer made a promise to the employee; that the employee relied on that promise to his detriment; and that the promise otherwise [satisfies the requirements of promissory estoppel]." *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 718 (Ind. 1997). It is not enough that the employer made a promise and failed to keep it; the promise had to be one that reasonably induced Boyd to do something that she would not otherwise have done. Here Boyd has not pled the existence of any promise made and broken by Keystone that induced her to act to her detriment. Accordingly, if she intended to state an alternative claim for promissory estoppel, she has failed to do so.

*Count III: Interference with an Economic Advantage*

Count III of the second amended complaint is entitled "Intentional Tort Interferance [sic] with an Economic Advantage and Conspiracy." As the Court noted in its ruling on the previous motion to dismiss, Indiana recognizes two torts to which Boyd might be referring: interference with prospective advantage and tortious interference with a business relationship.

> The elements of tortious interference with a business relationship are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship. Illegal conduct by the alleged wrongdoer is an essential element of tortious interference with a business relationship.

11

*Miller v. Central Indiana Community Foundation, Inc.*, 11 N.E.3d 944, 961 (Ind. Ct. App. 2014). The Court cannot discern any existing business relationship that Boyd alleges that Keystone knowingly and intentionally interfered with. The closest Boyd comes is her allegation that her dismissal from the New Wishard Project "effectively interefer[ed] with the Plaintiffs [sic] current and potential opportunities with Keystone Construction, The New Wishard Project and the Indiana Construction Industry." Second Amended Complaint, Dkt. 66 at ¶ 56. But Keystone cannot be liable for interfering with its own employment relationship with Boyd; while under Indiana "a claim for tortious interference with an employment relationship can be maintained upon a contract terminable at will," *Drake v. Dickey*, 2 N.E.3d 30, 36 (Ind. Ct. App. 2013) (quoting *Bochnowski v. Peoples Fed. Sav. & Loan*, 571 N.E.2d 282, 285 (Ind. 1991)), the interference must be by a "third party interferer." Boyd has not stated a claim for tortious interference with a business relationship against Keystone.

With regard to the tort of interference with prospective advantage, "the tort contemplates a relationship, prospective or existing, of some substance, some particularity, before an inference can arise as to its value to the plaintiff and the defendant's responsibility for its loss." *Hoffman v. Roberto*, 578 N.E.2d 701, 710 (Ind. Ct. App. 1991) (citations omitted). In addition, "one who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* Boyd has not identified any particular prospective relationship that she had that Keystone intentionally interfered with. Rather, she seems to allege that her experience with Keystone and

the non-compete agreement she entered into[5] harmed her ability to work in the construction industry in general. This general allegation of harm is insufficient to state a claim for interference with prospective advantage. Accordingly, Count III of the second amended complaint fails to state a claim.

*Count IV: Employment Discrimination*

In Count IV of her second amended complaint, Boyd asserts a claim for employment discrimination under Title VII. Keystone argues that this claim is untimely because it was asserted more than 90 days after Boyd received her right-to-sue letter from the EEOC. This argument ignores the fact that Boyd asserted that claim in her original complaint and the Court's dismissal of that claim without prejudice as premature gave Boyd the opportunity to amend her complaint to allege that she had received her right-to-sue letter. *See Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991).[6] She has now done so. Boyd's Title VII claim is not subject to dismissal on timeliness grounds.

---

[5] Boyd points out in her brief that a former employer's attempt to enforce an invalid non-compete agreement can lead to liability for tortious interference with an employment relationship. This is true. *See Guinn v. Applied Composites Engineering, Inc.*, 994 N.E.2d 1256 (Ind. Ct. App. 2013). However, while Boyd does allege that her non-compete agreement with Keystone was invalid, there are no facts in the second amended complaint that suggest that Keystone took any action to enforce the non-compete agreement that interfered with any employment relationship that Boyd had. Boyd seems to allude to such actions in her briefs, but does not do so clearly enough for the Court to discern what her claim is. If Boyd believes that Keystone improperly enforced the non-compete agreement as to a particular prospective employer and in so doing kept Boyd from getting a job that she would otherwise have gotten, she can move for leave to replead this allegation. In order for such leave to be granted, however, Boyd will have to clearly state (1) who the prospective employer was; (2) what actions Keystone took that kept her from getting the job; and (3) how those actions constituted enforcement of an invalid non-compete agreement or were otherwise unjustified.

[6] As Boyd correctly points out, she promptly filed a notice and a copy of her right to sue letter once she received it from the EEOC. The Court simply missed that filing when reviewing the docket in conjunction with ruling on the motion to dismiss.

Keystone also argues that Boyd fails to state a claim for employment discrimination for a variety of reasons. Keystone is correct that Boyd's second amended complaint does not set forth any facts that suggest that her discrimination claims are plausible. In *Luevano*, 722 F.3d at 1027, however, the court held that its pre-*Twombly* holding that "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex" survives under the new pleading standard in *Twombly*. While her complaint is by no means clear, viewing it leniently, as the Court is required to do, it can be read as alleging that she was subjected to "gender based biases" in the assignment of her work duties, she complained to Keystone about it, and Keystone did not remedy it. Second Amended Complaint at ¶ 67. Boyd also states in her brief that is asserting a claim for race discrimination. Given the very low bar for pleading discrimination, and adding to it the fact that Boyd is proceeding *pro se* and, as noted previously, "the pleading standards for *pro se* plaintiffs are considerably relaxed," *Luevano*, 722 F.3d at 1027, the Court finds that Boyd has stated a claim for gender and race discrimination, albeit by the slimmest of margins. The factual basis for that claim, the exact contours of it, and whether there is any basis for holding Keystone liable, remain to be determined.

That said, there is simply nothing in the second amended complaint or Boyd's briefs that can be read as stating a claim for age discrimination. To the extent that Boyd has attempted to assert such a claim, the motion to dismiss it is granted.

*Counts V and VI: Intentional Infliction of Emotional Distress and Invasion of Privacy*

Despite the Court's best efforts, the Court still is unable to discern what actions Boyd alleges that Keystone took that constitute intentional infliction of emotional distress and/or invasion of privacy. There are no factual allegations in the second amended complaint that rise

14

to the level of extreme and outrageous conduct required to sustain a claim for intentional infliction of emotional distress, and no factual allegations that the Court recognizes as supporting a claim for invasion of privacy. In her brief, Boyd refers to various documents, including discovery responses, but does not explain how those documents explain the basis for these claims. She alleges that she experienced "mobbing, bullying, ridicule, invasion of privacy, gas lighting, etc.," but she does not allege that Keystone or its employees were the culprits. She also discusses various events that occurred, such as water damage to her home, but she does not allege that Keystone was responsible for events; rather, she alleges only that she believes they were related to her work at New Wishard.[7] Accordingly, Keystone's motion to dismiss is granted as to Counts V and VI.

## DISMISSAL OF NEW WISHARD

In reviewing the instant motion, it has become clear to the Court that its Entry Dismissing Insufficient Claims, Dkt. No. 4, was erroneous, as it was based upon 28 U.S.C. § 1915 and that statute is not applicable to Boyd, who is not proceeding *in forma pauperis* in this case. The Court reads Boyd's original complaint as naming two Defendants—Keystone and The New Wishard Project Team JV Partnership ("New Wishard"). If Boyd wishes to pursue claims against New Wishard or other defendants that are related to the events at issue in this case, she may file a third amended complaint **within 21 days of the date of this Entry** that adds those

---

[7] To the extent that Boyd believes that the existence of certain indemnification provisions in the contract between Jacobs and Keystone permits her to sue Keystone directly for the actions of Jacobs or its employees, the Court is unaware of any legal principle that would permit such a suit. Keystone's agreement to "hold harmless" Jacobs for certain events (which may or may not encompass some or all of the claims alleged by Boyd; the Court does not have enough information to make that determination) only means that if Boyd were to recover against Jacobs for one of the covered events, Jacobs may have the right to be reimbursed by Keystone for any money Jacobs was required to pay Boyd.

claims. Boyd shall set forth the facts relevant to her claims without reference to other filings or discovery responses, and should take care to explain her claims and the factual bases for them in a clear manner. In other words, a person who knows nothing at all about this case should be able to read the third amended complaint, and only the third amended complaint, and understand what it is that Boyd believes each defendant did that injured her. Boyd shall make it clear who the defendants are and provide an address for each of them so that summons(es) may be issued by the Clerk. Boyd will be responsible for serving any new defendant (that is, each defendant except Keystone) with a summons and the third amended complaint as required by Federal Rule of Civil Procedure 4.

## CONCLUSION

For the reasons set forth above, Keystone's motion to dismiss Boyd's second amended complaint (Dkt. No. 68) is **GRANTED** with regard to Counts I, II, III, V, and VI. It is also **GRANTED** with regard to the age discrimination claim in Count IV. Accordingly, the only claims that currently remain in this case are race and gender discrimination claims against Keystone pursuant to Title VII; the motion to dismiss is **DENIED** as to those claims. Keystone's motion to strike (Dkt. No. 80) is **DENIED**.

As explained above, if Boyd wishes to pursue any claims against New Wishard or other defendants, she shall file a third amended complaint that includes those claims **within 21 days of the date of this Entry.**

SO ORDERED: 7/20/15

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by United States Mail to:**

**NORETTA F. BOYD**
**8002 Crestway Dr. 1205**
**Indianapolis, IN 46236**

Copies to all counsel of record via electronic notification